

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| NATIONAL BUILDERS AND CONTRACTORS INSURANCE COMPANY | PLAINTIFF |
| VS. | CIVIL ACTION NO. 3:10CV405 HTW-LRA |
| JAMES SALYER, SHEILA SALYER, NOBLE REAL ESTATE, ARTHUR NOBLE, INDIVIDUALLY AND JIMMY HALFACRE d/b/a HALFACRE ENGINEERING & INSPECTION | DEFENDANTS |

## COMPLAINT FOR DECLARATORY JUDGMENT

**COMES NOW,** the Plaintiff, NATIONAL BUILDERS AND CONTRACTORS INSURANCE COMPANY, A RISK RETENTION GROUP ("NBCI"), by and through its undersigned counsel, and files this, its Complaint for Declaratory Judgment, filed as a matter of right, pursuant to Rules 15(a) and 57 of the Federal Rules of Civil Procedure, and in support hereof would show unto the Court the following, to wit:

### PARTIES

1. NBCI is a foreign insurance corporation organized under the laws of the State of Nevada, with its principal place of business in Las Vegas, Nevada.

2. Defendant, JAMES SALYER, is an adult resident citizen of Madison County, Mississippi, who may be found and served process of this Honorable Court at 133 Saint Ives Drive, Madison, Mississippi.

3. Defendant, SHEILA SALYER, is an adult resident citizen of Madison County, Mississippi, who may be found and served process of this Honorable Court at 133 Saint Ives Drive, Madison, Mississippi.

4. Defendant, NOBLE REAL ESTATE, INC., is a Mississippi Business Corporation, authorized to do business in and in good standing with the State of

Mississippi, and which can be served process of this Honorable Court by and through its registered agent for service of process, Daniel S. Spivey, at 141 East Center Street, Canton, Mississippi.

5. Defendant, ARTHUR NOBLE, is an adult resident citizen of Madison County, Mississippi, who may be found and served process of this Honorable Court at 112 Langdon Drive, Madison, Mississippi.

6. Defendant, JIMMY HALFACRE d/b/a HALFACRE ENGINEERING & INSPECTION, is an adult resident citizen of Madison County, Mississippi, who may be found and served process of this Honorable Court at 422 Wolcott Circle, Ridgeland, Mississippi.

7. The Defendants named herein have been named as party Defendants to this civil action so that any Order or Judgment rendered in this matter, as to the existence of coverage owed to Defendants, NOBLE REAL ESTAET, INC. AND/OR ARTHUR NOBLE, INDIVIDUALLY, if any, by NBCI, will be binding upon all said Defendants under the theories of res judicata and/or collateral estoppel. Therefore, pursuant to *Coleman v. Mississippi Farm Bureau Ins. Co.*, 708 So. 2d 6 (Miss. 1998), all of said Defendants have been added as parties, pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, as each one of the Defendants' presence is necessary and indispensible for complete and final adjudication of the issues presented herein.

## JURISDICTION

8. This Court has jurisdiction pursuant to 28 U.S.C. § 2201 in that this civil action involves a declaratory judgment. Further, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

9. Rule 57 of the Federal Rules of Civil Procedure provides that NBCI may seek a declaration from this Court as to the rights and obligations among and between the parties in relation to the Exhibit "B", including, but not limited to, whether NBCI has an obligation to provide a defense and/or coverage to Defendants, NOBLE REAL ESTATE, INC., and/or ARTHUR NOBLE, INDIVIDUALLY, as to the Circuit Court Action filed by Defendants, JAMES SALYER AND SHEILA SALYER.

10. An actual controversy exists as between the parties.

## VENUE

11. Venue is proper in this Court, including, but not limited to, pursuant to 28 U.S.C. § 1391 in that one or more of the defendants, herein, resides in the Jackson Division of the Southern District of Mississippi.

## FACTS

12. A Contract for Real Estate was entered into between James and Sheila Salyer and Noble Real Estate on or around September 14, 2007. *See* Complaint, attached as Exhibit "A" at ¶5. The Salyers purchased the subject property from Noble Real Estate thereafter, closing on or about September 24, 2007. *Id.* at ¶9.

13. Shortly after the execution of the Real Estate Contract by the parties, the Salyers noticed a large crack in the back of the garage, and notified Noble Real Estate of same. *Id.* at ¶6. Noble Real Estate recommended that the Salyers retain Halfacre Engineering & Inspections to inspect the house and provide a report of its findings. The Salyers did this, and a report was submitted to them on or around September 22, 2007. That report revealed several cracks throughout the interior and exterior of the house, as well as trim separations, uneven doors and cracks in the brick veneer. Ultimately, however, it was Halfacre's opinion that the house was free of foundation problems. *Id.* at ¶7.

14. Nonetheless, due to the findings of Halfacre, the Salyers negotiated the purchase of a 2-10 Warranty on the house with Noble Real Estate. Exhibit "A" at ¶9.

15. Shortly after closing on the house, the Salyers noticed that the original crack in the back of the garage had grown larger and also noted that other cracks in the garage floor had also grown in number and in size. A claim was eventually made on the 2-10 Warranty with the Homebuyers Warranty Corporation. *Id.* at ¶10. Thereafter, the National Home Insurance Company, Inc., the administrator for the 2-10 Home Buyers Warranty, commissioned Bradley W. Martin, P.E., of B.W. Martin Consulting, to investigate the claim. *Id.* at ¶11.

16. Martin conducted several tests and ultimately opined that the materials used to fill the site, and upon which the foundation was laid, were not adequately compacted, resulting in soils being susceptible to both settlement and moisture intrusion. Martin specifically opined that the movements experienced by the structure are the result of higher than normal moisture contents within some of the soil strata and the resultant consolidation of the foundation materials present beneath the foundation of the structure. Martin recommended foundation stabilization and underpinning both the interior and exterior footings, along with leveling of the foundation to be performed. *Id.* at ¶12.

17. As a result of these things, James and Sheila Salyer filed an action entitled, "*James and Sheila Salyer v. Noble Real Estate, Inc., Arthur Noble, Individually and Jimmy C. Halfacre d/b/a Halfacre Engineering & Inspection*" in the Circuit Court of Madison County Mississippi, bearing Civil Action Number CI 2009-0318-C on the docket of said Court (the Circuit Court Action). A true and correct copy of the Circuit Court Action Complaint is attached hereto as **Exhibit "A"** and incorporated as if fully set forth herein.

18.     The claims made against Noble Real Estate include claims for rescission of the original Real Estate Purchase Contract, breach of the implied warranties of workmanship, habitability, merchantability, and fitness for particular use.  Exhibit "A" at ¶15.  The Salyers also allege that Noble Real Estate was negligent in failing to perform the construction of the subject house with the care, skill and experience of one in its industry.  Exhibit "A" at ¶17.  Further, the Salyers also make a claim for breach of the contractual and statutory obligation to build their house free from defects and in a good and workmanlike manner, habitable and in a condition acceptable to sellers, and in breach of the New Home Warranty Act, found at Miss. Code Annotated, §83-58-5.  Exhibit "A" at ¶¶17-18.

19.     Within their Complaint, the Salyers also make a claim against Arthur Noble, individually, for breach of express warranty that he would personally be responsible for any repairs for the house for a period of six years, as well as claim for professional negligence against Jimmy Halfacre, P.E.  Exhibit "A" at ¶¶21-22.

20.     The Salyers allege they sustained damages, including, but not limited to, depreciation or diminution in value of the property, as well as out-of-pocket repair costs, emotional distress over and above the actual repair of the house to be performed by the National Home Insurance Company, Inc., through the 2-10 Home Buyers Warranty.  The Salyers also seek attorney fees as a quanta of damages.  Exhibit "A" at ¶23.

## NBCI'S POLICY

21.     At all times relevant, Defendant, Noble Real Estate, Inc., owned a general liability insurance policy written by Plaintiff, NBCI, referenced as policy number GL2890120.  A true and correct copy of policy number GL2890120 is attached hereto and is incorporated herein by reference as **Exhibit "B"**.

22. NBCI's Policy, referenced as policy number GL2890120, ("NBCI's Policy") provides the following at Part A, relative to its Insuring Agreement:

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages and "defense expenses" is limited as described in Section III - Limits Of Insurance; and

        (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements and "defense expenses" under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who is An

        Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    (1)   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    (2)   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    (3)   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    e.    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Exhibit "B", Section 1—Coverages, Coverage A, Para. 1, Insuring Agreement, as modified by "Defense Expense" Included in the Limit of Insurance Endorsement.

23. BCI's Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. No emotional distress is covered except emotional distress caused by bodily injury." *See* Exhibit "B", Section V. Definitions at ¶3.

24. Furthermore, NBCI's Policy defines "property damage" as being related to "tangible property." *See* Exhibit "B", Section V. Definitions at ¶17. Specifically, NBCI's Policy defines "property damage" as,

    a.    Physical injury to tangible property *other than "your work" or "your product"*, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Exhibit "B", Section V, Definitions at ¶17 (italics added).

25. NBCI's Policy defines "your work" as,

    a.    Means:

        (1)    Work or operations performed by you or on your behalf; and

        (2)    Materials, parts or equipment furnished in connection with such work or operations.

    b.    Includes:

> (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
>
> (2) The providing of or failure to provide warnings or instructions.

Exhibit "B", Section V. Definitions at ¶22.

26. Further, NBCI's Policy requires that for either "bodily injury" or "property damage" to be covered, it must be caused by an "occurrence." NBCI's Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." NBCI's Policy defines "occurrence" in terms of being an "accident." Exhibit "B", Section V. Definitions at ¶13.

27. NBCI's Policy excludes coverage for:

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Exhibit "B" Section I, Coverage A- at ¶ 2. a.

28. Part B to NBCI's Policy also provides the following, in addition to the coverage provided under Part A:

> 1. Insuring Agreement
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against ant "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle

any claim or "suit" that may result. But:

(1) The amount we will pay for damages and "defense expenses" is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements and "defense expenses" under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

See Exhibit "B" at Section I Coverage B, Personal and Advertising Injury Liability, as modified by the "Defense Expense" Included in the Limit of Insurance Endorsement.

29. The NBCI Policy defines "personal and advertising injury" as follows:

Injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premise that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or

    organization or disparages a person's or organization's goods, products or services;

 e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

 f. The use of another's advertising idea in your "advertisement"; or

 g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

*See* Exhibit "B", Section V, at ¶14.

  30. NBCI's Policy contains the following endorsement that excludes coverage under both coverage Parts A and B:

> Notwithstanding any provision in this Insurance Policy or in the Schedule(s) to the contrary, this Insurance Policy does not apply to "bodily injury", "property damage", "personal injury", "medical payments", or "advertising injury", whether actual or alleged, that is in any manner subject to, governed by, arises out of, or is otherwise connected with, the warranties or any other obligations required of a "builder" under the Mississippi New Home Warranty Act (Mississippi Code annotated Sec. 83-58-1, et seq.). For purposes of this Amendment, the term "builder" has the same meaning as defined in the Mississippi New Home Warranty Act.

*See* Exhibit "B", New Home Warranty Act Amendment Exclusion, MS-2004-008 (10-04).

  31. In addition, NBCI's Policy also contains the following Absolute Earth Movement Exclusionary endorsement:

> The following is added to EXCLUSIONS, Coverages A and B.
>
> This insurance does not apply to damages because of "bodily injury", "property damage", or "personal injury" caused by, resulting from or aggravated by earth movement of any kind whatsoever, whether combined with water, including but not limited to earthquake, landslide, subsidence, mud flow, sink hold, erosion, or slipping, falling away, collapse, caving in, flowing, tilting, or any other movement of land, soil, earth or mud.

> This exclusion applies regardless of the cause or causes of the earth movement, whether said cause or causes would otherwise form a basis for coverage of any other cause or causes of the "bodily injury", "property damage" or "personal injury"; or whether any other cause or causes acted jointly, concurrently or in any sequence with the earth movement.

*See* Exhibit "B", MS-2004-006 (10-04).

## COUNT I – DECLARATORY JUDGMENT: NBCI'S GENERAL LIABILITY

32. NBCI incorporates the above allegations herein by reference, and would further show as follows:

33. The terms, conditions, exclusions and endorsements of NBCI'S Policy are clear and unambiguous.

34. The allegations of the Salyers' Complaint filed in the Circuit Court Action do not state a claim for damages because of "bodily injury" as that term is defined by NBCI's Policy and, therefore, there is no coverage available for any claims of "bodily injury" under Part A of the Policy.

35. The allegations of the Salyers' Complaint filed in the Circuit Court Action do not state a claim for damages because of "property damage" as that term is defined by NBCI's Policy and, therefore, there is no coverage available for any claims of "property damage" under Part A of the Policy.

36. Even if any "bodily injury" and/or "property damage" was alleged by Defendant Salyers' Complaint, it was not caused by an "occurrence" and, therefore, there is no coverage available for any claims of "bodily injury" or "property damage" under Part A of NBCI's Policy.

37. Even if "bodily injury" or "property damage" caused by an "occurrence" was alleged by Defendants Salyers' Complaint, any available coverage would be subject

to and excluded by the "Expected or Intended Injury" Exclusion contained in the Policy such that there is no coverage available under Part A of NBCI's Policy.

38. Within their Complaint filed in the Circuit Court Action, the Salyers have not stated any claims seeking to have Defendants, Noble Real Estate, Inc., or Arthur Noble, Individually, found liable for any of the listed "offenses" making up the definition of "Personal Injury" and "Advertising Injury", as provided by NBCI's Policy, such that there is no coverage available under Part B of NBCI's Policy.

39. Even if coverage was otherwise available under Part A or Part B of NBCI's Policy, the claims made by the Plaintiffs' Complaint in this matter for damages under the New Home Warranty Act, which include claims for attorneys' fees under that statute, see West's A.M.C. § 83-58-17 (1), would be excluded by the New Home Warranty Act Amendment Exclusion, MS-2004-008 (10-04) of NBCI's Policy.

40. Any "property damage" which is the subject of the Salyers' claim as underlying their Complaint would be subject to and excluded by the Absolute Earth Movement Exclusionary endorsement contained in NBCI's Policy, which is applicable to any coverage available under Part A or Part B of NBCI's Policy.

41. There is no coverage for, including a duty to defend or indemnify, Defendants, NOBLE REAL ESTATE, INC. and/or ARTHUR NOBLE, INDIVIDUALLY, under NBCI'S Policy for the claims of Defendants, JAMES SALYER and SHEILA SALYER, in the Circuit Court Action.

**WHEREFORE, PREMISES CONSIDERED**, NBCI prays that this Court:

A. Declare that the terms and conditions of of NBCI's Policy, numbered GL2890120, relieve it of any duty which otherwise exists to provide liability coverage, including a duty of defense and/or indemnification, for Defendants, NOBLE REAL ESTATE, INC. and/or ARTHUR NOBLE, individually, for any and all claims arising out

of the claims of Defendants, JAMES SALYER and SHEILA SALYER, in the Circuit Court Action; and

  B. Enjoin each and every one of these Defendants from either initiating or prosecuting a suit or any other action, including any post-judgment remedial action or garnishment against NBCI, until such time as this Court declares the rights and duties of the parties requested above; and

  C. Advance this cause on the Court's calendar as authorized by Federal Rule of Civil Procedure 57; and

  D. Grant NBCI such other general relief as this Court deems appropriate.

**FURTHERMORE**, NBCI prays that this Complaint for Declaratory Judgment be received and that the declaratory relief be entered on each of the issues set forth above.

  **RESPECTFULLY SUBMITTED** on this the 16th day of July, 2009.

        NATIONAL BUILDERS AND CONTRACTORS INSURANCE COMPANY, A RISK RETENTION GROUP

      By: _____
        CLYDE X. COPELAND, III
        JOHN S. GRAHAM

OF COUNSEL:

CLYDE X. COPELAND, III, (MSB# 10322)
JOHN S. GRAHAM (MSB#100364)
HARRIS, JERNIGAN & GENO
587 Highland Colony Pkwy.
P.O. Box 3380
Ridgeland, Mississippi 39158-3380
Telephone: (601) 427-0048
Facsimile: (601) 427-0051